IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

KECIA HENDRIX,

     Plaintiff,

v.                             Case No. 3:20-cv-0437-N-BT

IQOR INC., et al.,

     Defendants.

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE

Before the Court is Defendant iQor Holdings US, LLC's (iQor) Rule 12(b)(6) motion to dismiss, requesting the Court dismiss pro se Plaintiff Kecia Hendrix's employment-discrimination and retaliation claims against iQor because they are time barred. For the following reasons, the Court should GRANT iQor's motion (ECF No. 27) in part and DENY it in part.

## Background

On February 21, 2020, pro se Plaintiff Kecia Hendrix filed this lawsuit against her former employers, iQor, Southwestern Bell Telephone Company, and AT&T, alleging they violated the Texas Commission on Human Rights Act (TCHRA) under chapter 21 of the Texas Labor Code, Title VII of the Civil Rights Act of 1964, and 42 U.S.C. § 1981, by discriminating against her on the basis of race and retaliating against her for filing an EEOC charge and an employment-discrimination lawsuit. Compl. 1, 10-12, 22 (ECF No. 3). Hendrix, an African

American woman, worked for Southwestern Bell and AT&T from September 11, 2000, until "around November 2011." *Id.* 3. Hendrix alleges Southwestern Bell and AT&T wrongfully terminated her because of racial discrimination. *Id.* 4. As a result, she filed a lawsuit in the Eastern District of Texas seeking $30,000,000.00 in damages from them. *Id.*; *see also* FCR 5 n.1 (ECF No. 12) (noting Hendrix identifies her Eastern District lawsuit as 4:12-cv-00685 before Judge Richard Schell). The Eastern District of Texas dismissed her lawsuit in March 2015. Compl. 8.

Before the Eastern District dismissed her lawsuit, Hendrix began working for iQor at a call center in Richardson, Texas, on July 15, 2013. *Id.* 3-5. While employed by iQor, Hendrix observed her coworkers engage in offensive and racist behavior. *Id.* 5-6. She alleges that iQor's president, Devon Decker, told employees to "wipe off the chicken grease from their computers," and allowed managers to display pictures of monkeys on employees' computer screens. *Id.* Hendrix also alleges that iQor discriminated against African American employees by paying them less than white employees, refusing to overlook their mistakes, and terminating them more often than white employees. *Id.* 5. Around July 24, 2015, AT&T completed its acquisition of DIRECTV, and iQor employees began taking calls for AT&T/DIRECTV. *See id.* 7. Before that acquisition was complete, Hendrix contends that AT&T and Southwestern Bell informed iQor about the lawsuit she filed against them in the Eastern District of Texas, and iQor terminated her on June 14, 2015, in retaliation for bringing that lawsuit. *Id.* 4, 9-10. Subsequently, Hendrix, proceeding in forma pauperis, filed this lawsuit against iQor,

Southwestern Bell, and AT&T, seeking $45,000,000.oo in damages. *Id.* 22; Order (ECF No. 7). The Court previously determined Hendrix's claims against Southwestern Bell and AT&T were frivolous and dismissed them under 28 U.S.C. § 1915(e). FCR (ECF No. 12); Order Accepting (ECF No. 38). However, Hendrix's claims against iQor remained pending because the Court stayed the case with respect to iQor under § 362(a) of the Bankruptcy Code. Order (ECF No. 11). Once iQor emerged from its bankruptcy, the Court lifted the stay, and iQor filed its Rule 12(b)(6) motion to dismiss on December 29, 2020. Order (ECF No. 26); Mot. (ECF No. 27). Plaintiff failed to respond, and the time for filing a response has expired. Therefore, iQor's motion is ripe for determination, and the Court considers it without the benefit of a response.

## Legal Standards

When deciding a 12(b)(6) motion to dismiss for failure to state a claim, the court "accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotation marks and citations omitted). To survive a Rule 12(b)(6) motion, therefore, a plaintiff's complaint must contain sufficient factual matter to state a claim for relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "To be plausible, the complaint's '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" *In re Great Lakes Dredge & Dock Co. LLC*, 624 F.3d 201, 210 (5th Cir. 2010) (quoting *Twombly*, 550 U.S. at 555).

This pleading standard does not require "detailed factual allegations," but it does demand more than an unadorned accusation devoid of factual support. *Ashcroft v. Iqbal*, 556 U.S. 6 62, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). "[A] formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679. Where the facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has stopped short of showing that the plaintiff is plausibly entitled to relief. *Id.* at 678 (citing *Twombly*, 550 U.S. at 557).

"In determining whether a plaintiff's claims survive a Rule 12(b)(6) motion to dismiss, the factual information to which the court addresses its inquiry is limited to (1) the facts set forth in the complaint, (2) documents attached to the complaint, and (3) matters of which judicial notice may be taken under Federal Rule of Evidence 201." *Inclusive Cmtys. Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 900 (5th Cir. 2019) (citing *Norris v. Hearst Tr.*, 500 F.3d 454, 461 n.9 (5th Cir. 2007); *R2 Invs. LDC v. Phillips*, 401 F.3d 638, 640 n.2 (5th Cir. 2005)); *see also* Fed. R. Evid. 201(b)(2) (permitting courts to judicially notice a fact that "can

be accurately and readily determined from sources whose accuracy cannot reasonably be questioned").

Additionally, under 28 U.S.C. § 1915, a court may dismiss a complaint filed in forma pauperis if it concludes that the action is frivolous or malicious, fails to state a claim on which relief can be granted, or seeks monetary relief against a defendant who is immune from suit. 28 U.S.C. § 1915(e)(2)(B). A court may also sua sponte dismiss a complaint filed in forma pauperis if it is clear that the claims asserted are barred by limitations. *Gartrell v. Gaylor*, 981 F.2d 254, 256 (5th Cir. 1993) (per curiam) (citing *Ali v. Higgs,* 892 F.2d 438, 440 (5th Cir. 1990); *Burrell v. Newsome,* 883 F.2d 416, 418 (5th Cir. 1989)).

## Analysis

Defendant iQor argues that "Plaintiff's race discrimination and race retaliation claims under the TCHRA, Title VII, and Section 1981 [against iQor] are clearly time-barred." Def.'s Br. 4 (ECF No. 28). Plaintiff failed to file a response, and so she offers no explanation or counterargument. The Court finds that Hendrix's § 1981 and TCHRA claims are time-barred and should be dismissed, but the Court cannot determine on the face of the pleadings whether Hendrix's Title VII claims are also time-barred. *See Taylor v. Lear Corp.*, 2017 WL 6209031, at *2 (N.D. Tex. Dec. 8, 2017) (Fitzwater, J.) ("To obtain a Rule 12(b)(6) dismissal based on an affirmative defense, the 'successful affirmative defense [must] appear[ ] clearly on the face of the pleadings.' In other words, defendants are not entitled to dismissal under Rule 12(b)(6) based on an affirmative defense unless Taylor 'has

pleaded [her]self out of court by admitting to all of the elements of the defense.'"
(quoting *Cochran v. Astrue*, 2011 WL 5604024, at *1 (N.D. Tex. Nov. 17, 2011)
(Fitzwater, C.J.))). Nonetheless, the Court finds that Hendrix fails to state a Title
VII-discrimination claim and recommends dismissing it under 28 U.S.C.
§ 1915(e)(2)(B)(ii). Only Hendrix's Title VII-retaliation claim remains. The Court
first addresses Hendrix's § 1981 and TCHRA claims before turning to her Title VII
claims.

§ 1981

The Court finds Hendrix's § 1981 discrimination and retaliation claims are
time-barred. Section 1981 provides that "[a]ll persons within the jurisdiction of the
United States shall have the same right in every State and Territory to make and
enforce contracts." 42 U.S.C. § 1981(a). The statute defines "[m]ake and enforce
contracts" as "the making, performance, modification, and termination of
contracts, and the enjoyment of all benefits, privileges, terms, and conditions of
the contractual relationship." § 1981(b); *see also Jones v. R.R. Donnelley & Sons
Co.*, 541 U.S. 369, 383 (2004) (noting that the Civil Rights Act of 1991 defined "the
key 'make and enforce contracts' language in § 1981 to include the 'termination of
contracts, and the enjoyment of all benefits, privileges, terms, and conditions of
the contractual relationship'" (quoting § 1981(b))). To bring a § 1981 claim for
contractual discrimination, a plaintiff "must allege that (1) [he or she is a]
member[] of a racial minority; (2) [the] [d]efendant[] intended to discriminate on
the basis of race; and (3) the discrimination concerned one or more of the activities

6

enumerated in the statute—here, making a contract." *Body by Cook, Inc. v. State Farm Mut. Auto. Ins.*, 869 F.3d 381, 386 (5th Cir. 2017) (citing *Bellows v. Amoco Oil Co.*, 118 F.3d 268, 274 (5th Cir. 1997); *Green v. State Bar of Tex.*, 27 F.3d 1083, 1086 (5th Cir. 1994)). And "[t]he elements of a § 1981 retaliation claim are[:] (1) that the plaintiff engaged in activities protected by § 1981; (2) that an adverse action followed; and (3) a causal connection [exists] between the protected activities and the adverse action." *Id.* at 390 (citing *Foley v. Univ. of Hous. Sys.*, 355 F.3d 333, 339, 340 n.8 (5th Cir. 2003)). "Because § 1981 lacks an express statute of limitations, courts adopt the most closely analogous state-law limitations period," and "where a section 1981 claim is brought in Texas, the two year statute of limitations for personal injury actions in Texas controls." *Teamah v. Applied Materials, Inc.*, 715 F. App'x 343, 346 (5th Cir. 2017) (per curiam) (quoting *Jones v. ALCOA, Inc.*, 339 F.3d 359, 364 (5th Cir. 2003)). However, "'if the plaintiff's claim against the defendant was made possible' by the 1991 revisions to the statute, then a four-year statute of limitations applies." *Id.* at 346 n.13 (citing *Fonteneaux v. Shell Oil Co.*, 289 F. App'x 695, 698 (5th Cir. 2008) (per curiam)); *see also R.R. Donnelley & Sons Co.*, 541 U.S. at 382. "The 1991 revisions allow a plaintiff to sue for conduct, such as harassment or termination, that occurs after contract formation." *Johnson v. Crown Enters., Inc.*, 398 F.3d 339, 341 (5th Cir. 2005). Thus, where a plaintiff brings a § 1981 claim for "hostile work environment, wrongful termination, and failure to transfer," those claims arise under the 1991

amendment to § 1981, and the four-year statute of limitations under 28 U.S.C. § 1658 applies. *R.R. Donnelley & Sons Co.*, 541 U.S. at 382-83.

Here, Hendrix's complaint does not explain the nature of her § 1981 claims. *See* Compl. In fact, Hendrix only mentions § 1981 on the civil cover sheet attached to her complaint, which lists "Section 1981" beneath the instruction: "cite the U.S. Civil Statute under which you are filing." *Id.* 22. Below that, under "brief description of cause," she states, "I was discriminated and retaliated against because I filed a EEOC Charge and participated in a lawsuit in violation of Title VII." *Id.* However, the facts Hendrix alleges indicate that her claims against iQor flow from her contention that "Iqor falsely terminated her" about "June 14, 2015," because of discrimination. *Id.* 4, 9. She further alleges that "[i]f she would have known by filing a lawsuit/complaint/charge against a corporation would result in retaliation, she would not have done it." *Id.* 10. Accordingly, the Court construes Hendrix's allegations to assert race-discrimination and retaliation claims under § 1981 arising out of her termination. Section 1981 claims concerning wrongful termination "arise under" the 1991 amendment to the statute and are governed by § 1658's four-year statute of limitations. Causes of action to which § 1658 applies "may not be commenced later than 4 years after the cause of action accrues." 28 U.S.C. § 1658(a). And "[t]he limitations period for [section] 1981 . . . employment discrimination cases commences when the plaintiff knows or reasonably should know that the [challenged] discriminatory act has occurred." *ALCOA, Inc.*, 339 F.3d at 364 (quoting *McWilliams v. Escambia Cnty. Sch. Bd.,* 658 F.2d 326, 330

(5th Cir. Unit B Oct. 1981)); *see also Pena v. Tex. Med. Bd.*, 675 F. App'x 465, 467 (5th Cir. 2017) (per curiam). Though Hendrix alleges instances of discriminatory conduct against employees that occurred during her term of employment, the culminating discriminatory and retaliatory act of which she complains is her termination. Her § 1981 claims, therefore, accrued when she was terminated on June 14, 2015, and she had until June 14, 2019, to bring them. Hendrix filed her lawsuit on February 21, 2020. *See* Compl. Accordingly, Hendrix's § 1981 discrimination and retaliation claims are time-barred and should be DISMISSED with prejudice.

## Texas Commission on Human Rights Act

The Court also finds Hendrix's TCHRA claims are time-barred. Section 21.256 of the Texas Labor Code provides "[a] civil action may not be brought under this subchapter later than the second anniversary of the date the complaint relating to the action is filed." Tex. Lab. Code § 21.256; *see also Vielma v. Eureka Co.*, 218 F.3d 458, 463 (5th Cir. 2000) ("Whether she receives a letter [notifying her of her right to file a civil action under the TCHRA] or not, the complainant must institute her state suit within two years of filing the administrative complaint." (citing Tex. Lab. Code § 21.256)). The Texas Commission on Human Rights (TCHR) and the EEOC have entered into a "Worksharing Agreement," in which each has "designate[d] the other as its agent for the purpose of receiving and drafting charges, including those that are not jurisdictional with the agency that initially receives the charges." *Vielma*, 218 F.3d at 462 (citation omitted). Thus, "when a

complainant files her initial charge with the EEOC, her charge will also be considered filed with the TCHR." *Id*. at 462-63 (citing *Griffin v. City of Dall.*, 26 F.3d 610, 612-13 (5th Cir. 1994); *Price v. Phila. Am. Life Ins. Co.*, 934 S.W.2d 771, 773 (Tex. App.—Houston [14th Dist.] 1996, no writ)); *see also Fort Bend Cnty. v. Davis*, 139 S. Ct. 1843, 1846 (2019) ("If the state or local agency has a 'worksharing' agreement with the EEOC, a complainant ordinarily need not file separately with federal and state agencies. She may file her charge with one agency, and that agency will then relay the charge to the other." (citing 29 CFR § 1601.13)); *Williamson v. Pay & Save, Inc.*, 205 F. Supp. 3d 863, 867-68 (W.D. Tex. 2015) ("Accordingly, 'when a complainant files her initial charge with the EEOC, her charge will also be considered filed with the TCHR.'" (quoting *Vielma*, 218 F.3d at 462-63)).

Here, Hendrix asserts "disparate treatment based on race," discrimination, and retaliation claims under chapter 21 of the Texas Labor Code, or the TCHRA. Compl. 10-12. Hendrix alleges that she filed her EEOC charge regarding these claims on November 6, 2015. *Id*. 11-12. Hendrix therefore had until November 6, 2017, two years from the date she filed her EEOC charge, to bring her TCHRA claims. Hendrix filed her complaint on February 21, 2020. *See id*. Accordingly, her TCHRA claims are time-barred and should be DISMISSED with prejudice.

Title VII

1. Limitations

Defendant iQor contends that Hendrix's Title VII claims are time-barred because she did not file them within 90 days of receiving her Notice of Rights from the EEOC. Def.'s Br. 5. However, Hendrix does not allege the date she received her Notice of Rights. *See* Compl. Thus, the Court cannot determine from the pleadings whether Hendrix's Title VII claims are time-barred.

Under Title VII, a plaintiff must file a charge with the EEOC: within 180 days after the alleged unlawful employment practice occurred or, if the plaintiff initially instituted proceedings with a state or local agency, within 300 days after the alleged unlawful employment practice occurred, or 30 days after receiving notice that the state or local agency has terminated the proceedings, whichever is earlier. 42 U.S.C. § 2000e-5(e)(1); *see also Fort Bend Cnty*., 139 S. Ct. at 1846. "If the state or local agency has a 'worksharing'" agreement with the EEOC, a complainant ordinarily need not file separately with federal and state agencies." *Fort Bend Cnty*., 139 S. Ct. at 1846. And a plaintiff must file suit in federal court within 90 days after being notified of her right to sue by the EEOC. 42 U.S.C. § 2000e-5(f)(1).

Here, Hendrix alleges that she filed an employment-discrimination and retaliation charge with the EEOC on November 6, 2015—146 days after iQor terminated her employment. Compl. 11-12. Defendant iQor contends Hendrix received her Notice of Rights from the EEOC on May 29, 2019, and untimely filed her lawsuit 268 days later. Def.'s Br. 5. But though "[a] statute of limitations may

support dismissal under Rule 12(b)(6) where it is evident from the plaintiff's pleadings that the action is barred and the pleadings fail to raise some basis for tolling," *ALCOA, Inc.*, 339 F.3d at 366 (citations omitted), Hendrix does not allege the date she received her Notice of Rights, nor does iQor attach any document to its motion substantiating its assertion that she received the Notice on May 29, 2019.[1] *See* Mot.; Def.'s Br.; Compl.; *see also Inclusive Cmtys. Project, Inc.*, 920 F.3d at 900 ("In determining whether a plaintiff's claims survive a Rule 12(b)(6) motion to dismiss, the factual information to which the court addresses its inquiry is limited to (1) the facts set forth in the complaint, (2) documents attached to the complaint, and (3) *matters of which judicial notice may be taken under Federal Rule of Evidence 201*." (emphasis added) (citing *Norris*, 500 F.3d at 461 n.9; *R2 Invs. LDC*, 401 F.3d at 640 n.2)); Fed. R. Evid. 201(b)(2) (permitting courts to judicially notice a fact that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned"). Because "a plaintiff typically is not required to plead, in the complaint, facts that negate an affirmative defense," *Maskell (Curry) v. Willow Bend Mortg. Co.*, 2012 WL 13020181, at *2 (N.D. Tex. June 15, 2012) (citing *Jones v. Bock*, 549 U.S. 199, 216 (2007) (Roberts, C.J.)), and because the Court is unable to determine on the face of Hendrix's complaint whether her Title VII claims are time-barred, iQor's limitations argument fails with respect to Hendrix's Title VII claims. Defendant iQor offers no other argument as

---

[1] The Court would be inclined to consider such evidence presented in support of any objection to these Findings, Conclusions, and Recommendation.

to why Hendrix's Title VII claims should be dismissed. Accordingly, the Court should DENY iQor's motion with respect her Title VII claims.

## 2. § 1915(e)(2)(B)(ii)

Although the Court recommends denying iQor's motion with respect to Hendrix's Title VII claims on limitation grounds, the Court finds Hendrix, proceeding in forma pauperis, fails to state a Title VII-discrimination claim and recommends her Title VII-discrimination claim be dismissed under 28 U.S.C. § 1915(e)(2)(B)(ii). Hendrix's Title VII-retaliation claim, however, survives.

## A. Discrimination

Hendrix fails to state a race-discrimination claim under Title VII. Title VII prohibits employers from "fail[ing] or refus[ing] to hire or [ ] discharg[ing] any individual, or otherwise [ ] discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). At the motion to dismiss stage, "a plaintiff need not submit evidence to establish the prima facie case for discrimination," but "she must plead sufficient facts on all of the ultimate elements of the claim to make her case plausible." *Davis v. Tex. Health & Hum. Servs. Comm'n*, 761 F. App'x 451, 454 (5th Cir. 2019) (per curiam) (citing *Chhim v. Univ. of Tex.*, 836 F.3d 467, 470 (5th Cir. 2016) (per curiam)). To state a claim for discrimination under Title VII, a plaintiff must plead that she "(1) is a member of a protected class; (2) was qualified for the position [s]he held; (3) was subject to an adverse employment action; and (4) was treated less favorably

than others similarly situated outside of [her] protected class." *Alkhawaldeh v. Dow Chem. Co.*, 851 F.3d 422, 426 (5th Cir. 2017) (citing *Bryan v. McKinsey & Co.*, 375 F.3d 358, 360 (5th Cir. 2004)).

Here, Hendrix, an African American woman, alleges that she is a member of a protected class, that she "qualified as a senior representative for Defendant [iQor]," and that iQor terminated her employment on June 14, 2015, because of "work performance" and "attendance issues"—reasons which Hendrix asserts are a pretext for discrimination. Compl. 3-4, 9; *see Eng. v. Perdue*, 777 F. App'x 94, 99-100 (5th Cir. 2019) (quoting *Stroy v. Gibson*, 896 F.3d 693, 699 (5th Cir. 2018)) (stating "[a]dverse employment actions are ultimate employment decisions such as hiring, firing, demoting, promoting, granting leave, and compensating"). However, she fails to plead with any specificity that she was treated less favorably than others similarly situated outside of her protected class. Instead, she generally asserts that iQor discriminated against African American employees because she "witnessed numerous similarly situated employees" who were "offered higher positions[, a higher hourly rate of pay, and more benefits] more often"; "terminated far less often";  received "over time more often"; and had "there [sic] work performance mistakes . . . overlooked more often" than African American employees. Compl. 5. Additionally, Hendrix alleges iQor "failed to pay the African American employees their rest breaks more often than those similarly situated," and explains that iQor President Devon Decker permitted managers to put a picture of a monkey on employees' computer screens and told employees to "wipe

off the chicken grease from their computers," allegedly referring to "a stereotypical view of black America." *Id*. 5-6. But she does not identify particular employees or describe specific situations involving similarly situated non-African American employees, who were treated more favorably. Nor does she plead any facts indicating that iQor terminated her employment *because of* her race. *See Outley v. Luke & Assocs., Inc.*, 840 F.3d 212, 216 (5th Cir. 2016) (citing 42 U.S.C. § 2000e-2(a)(1)) ("Title VII prohibits discrimination 'because of' a protected characteristic, including race."). Though Hendrix need not "make a showing of each prong of the prima facie test for disparate treatment at the pleading stage," *Raj v. La. State Univ.*, 714 F.3d 322, 331 (5th Cir. 2013) (citing *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 512   (2002) (Thomas, J.)), her allegations are too conclusory for the Court to reasonably infer that she was treated differently than other similarly situated employees because of her race. *See Thornton v. Dall. ISD*, 2014 WL 46398, at *3 (N.D. Tex. Jan. 6, 2014) ("While a plaintiff is not required to plead a prima facie case based on discrimination and retaliation at the pleading stage for purposes of Rules 8 and 12(b)(6), he must set forth allegations that would enable the court to reasonably infer that his employer or employment agency discriminated against him in violation of Title VII and took the alleged adverse employment action because he engaged in protected activity." (quoting *Nieman v. Hale,* 2012 WL 3204990, at *4 (N.D. Tex. Aug. 8, 2012)). Accordingly, Hendrix's Title VII-discrimination claim should be DISMISSED without prejudice. *See Raj,* 714 F.3d at 331 (affirming Rule 12(b)(6) dismissal where plaintiff "did not allege

any facts, direct or circumstantial, that would suggest [defendant]'s actions were based on [plaintiff]'s race or national origin or that [defendant] treated similarly situated employees of other races or national origin more favorably").

### B. Retaliation

Nonetheless, Hendrix's Title VII-retaliation claim narrowly survives a Rule 12(b)(6) analysis. Title VII's antiretaliation provision prohibits an employer from discriminating against any "employee[] or applicant[] for employment . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). "'Title VII protects an employee from *any* employer, present or future, who retaliates against him because of his prior or ongoing opposition to an unlawful employment practice or participation in Title VII proceedings,' including proceedings against a former employer." *Anderson v. Greenville Health Sys.*, 2019 WL 7905899, at *2 n.2 (D.S.C. Aug. 28, 2019) (quoting *McMenemy v. City of Rochester*, 241 F.3d 279, 284 (2nd Cir. 2001)) (citing *Abreu v. Suffolk Cnty. Police Dep't*, 2007 WL 608331, at *11 (E.D.N.Y. Feb. 23, 2007) ("There is nothing in Title VII that limits retaliation claims to situations where an individual is engaging in protected activity against his or her own employer; rather, the plain language of Title VII clearly prohibits retaliation by an employer against an employee who is taking any action to protest or oppose statutorily prohibited employment discrimination by any employer, whether such protected activity is

directed against that individual's employer or some other party with whom that individual has no employment relationship (such as a former employer).")"), *adopted by* 2020 WL 255700 (D.S.C. Jan. 17, 2020); *c.f. Steffes v. Stepan Co.*, 144 F.3d 1070, 1076 (7th Cir. 1998) (stating that *Veprinsky v. Fluor Daniel, Inc.,* 87 F.3d 881, 894 (7th Cir. 1996), "held that an employer might commit unlawful retaliation by revealing, without any apparent legitimate justification, that one of its former employees ha[d] filed discrimination charges against it," but that such revelation was justified in *Steffes* "to ascertain the nature of Steffes's employment"); *Sherman v. Fivesky, LLC*, 2020 WL 5105164, at *6 (S.D.N.Y. Aug. 31, 2020) ("A reasonable employee might well be dissuaded from making a charge of discrimination by the threat that a defendant would contact future potential employers and gratuitously inform them of the Title VII lawsuit even before an offer of employment was extended." (citing *Rutherford v. Am. Bank of Com.*, 565 F.2d 1162, 1164 (10th Cir. 1977)).

"To state a claim for retaliation in violation of Title VII, a plaintiff must allege that '(1) he participated in an activity protected by Title VII; (2) his employer took an adverse employment action against him; and (3) a causal connection exists between the protected activity and the adverse employment action.'" *Leal v. McHugh*, 731 F.3d 405, 416-17 (5th Cir. 2013) (quoting *McCoy v. City of Shreveport,* 492 F.3d 551, 556-57 (5th Cir. 2007) (per curiam)). Though "a plaintiff need not make out a prima facie case of [retaliation] in order to survive a Rule 12(b)(6) motion to dismiss for failure to state a claim," the prima-facie standard

"has some relevance at the motion-to-dismiss stage," because in order to sufficiently state a Title VII-retaliation claim, "a plaintiff must 'plead sufficient facts on all of the ultimate elements' to make her cause plausible." *Jenkins v. La. Workforce Comm'n*, 713 F. App'x 242, 244, 245 (5th Cir. 2017) (per curiam) (quoting *Raj*, 714 F.3d at 331) (citing *Chhim*, 836 F.3d at 470-71).

Here, Hendrix pleads: "This case came about after her former employer (AT&T/SWBT) found out where she worked, became a business partner, told their business partner Iqor that Mrs. Hendrix has filed a discrimination case against them and was a problem. Subsequently, Iqor falsely terminated her, and then became inconsistent in the reasons for her termination." Compl. 4. Hendrix sufficiently alleges that she engaged in activity protected by Title VII, stating that after her former employers, AT&T and Southwestern Bell, terminated her, "she exhausted all her administrative duties" and then filed a race-discrimination lawsuit against them. *Id*.; *Jenkins*, 713 F. App'x at 245 ("An employee has engaged in activity protected by Title VII if she has either (1) 'opposed any practice made an unlawful employment practice' by Title VII or (2) 'made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing' under Title VII." (quoting *Long v. Eastfield Coll.*, 88 F.3d 300, 304 (5th Cir. 1996))). She alleges that iQor took an adverse employment action against her by terminating her. Compl. 9; *see Newbury v. City of Windcrest*, 991 F.3d 672, 678 (5th Cir. 2021) (citing *Cabral v. Brennan*, 853 F.3d 763, 767 (5th Cir. 2017)) ("In the Title VII-retaliation context, an employment action must be materially adverse,

such that it would dissuade a reasonable employee from making a discrimination complaint."); *Evans-Rhodes v. Nw. Diagnostic Clinic, P.A.*, 2013 WL 5603003, at *3 (S.D. Tex. Oct. 11, 2013) (finding "Plaintiff ha[d] certainly pleaded that Defendant took an adverse employment action against her" with respect to her retaliation claim when the defendant terminated her). And she alleges that a causal connection exists between iQor's decision to terminate her employment and her filing a discrimination lawsuit against AT&T and Southwestern Bell.

Causation in Title VII-retaliation cases "is difficult to prove" and "calls for a highly fact specific analysis." *Eng.*, 777 F. App'x at 98 (internal quotation marks omitted) (quoting *Nowlin v. Resol. Tr. Corp.*, 33 F.3d 498, 508 (5th Cir. 1994)). "Among other factors, [the Fifth Circuit] [has] suggested that an employee's 'past disciplinary record,' an employer's departure from 'typical policy and procedures,' and 'the temporal relationship between the employee's conduct and discharge' might shed light on the causal component of a retaliation claim." *Id.* (quoting *Nowlin*, 33 F.3d at 508). Hendrix does not allege any facts concerning her disciplinary record to suggest that iQor departed from its typical policy and procedures. However, she does allege that she began working for iQor on July 15, 2013, while her Eastern District lawsuit was pending; that she attended a hearing during a workday in January 2014; that iQor began doing business with AT&T and Southwestern Bell during her employment with iQor; and that nearly a month and a half before AT&T completed its acquisition of DIRECTV and iQor employees were to begin taking calls for AT&T/DIRECTV, iQor terminated her. Compl. 3, 6-

9. Additionally, Hendrix alleges that she "confided in her supervisor Anastasia Grant amongst a few other upper management about the lawsuit against AT&T/SWBT," and Grant told her "she was on their radar to get rid of her." *Id*. 8.

While "temporal proximity alone, when very close, can in some instances establish a prima facie case of retaliation, . . . the plaintiff must show that her participation in a protected activity was a but-for cause of the adverse action." *Ganheart v. Brown*, 740 F. App'x 386, 389 (5th Cir. 2018) (per curiam) (internal quotation marks and citation omitted); *see also Strong v. Univ. Healthcare Sys., L.L.C.*, 482 F.3d 802, 808 (5th Cir. 2007) ("*Breeden* makes clear that (1) to be persuasive evidence, temporal proximity must be very close, and importantly (2) temporal proximity alone, when very close, can in some instances establish a *prima facie case* of retaliation. But we affirmatively reject the notion that temporal proximity standing alone can be sufficient proof of but for causation. Such a rule would unnecessarily tie the hands of employers." (citing *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (per curiam))). But at this juncture, the motion-to-dismiss stage, Hendrix need not establish a prima-facie case to survive a motion to dismiss; rather, she must plead sufficient facts to make her case plausible. *See Jenkins*, 713 F. App'x at 244-45; *see also Evans-Rhodes*, 2013 WL 5603003, at *2 ("Importantly, however, '[t]he prima facie case under *McDonnell Douglas* . . . is an evidentiary standard, not a pleading requirement.'" (quoting *Swierkiewicz,* 534 U.S. at 510)). And, though Hendrix's factual allegations must "raise the right to relief above the speculative level," the Fifth Circuit has instructed courts to "hold

pro se plaintiffs to a more lenient standard than lawyers when analyzing complaints." *Chhim*, 836 F.3d at 469 (citing *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002); *Twombly*, 550 U.S. at 555); *see also Ganheart*, 740 F. App'x at 389 ("'[P]ro se complaints are held to less stringent standards than formal pleadings drafted by lawyers' . . . ." (quoting *Calhoun v. Hargrove*, 312 F.3d 730, 733 (5th Cir. 2002))). Accordingly, the Court finds Hendrix's allegations regarding the timing of iQor's decision to terminate her, relative to when iQor employees would begin taking calls for AT&T/DIRECTV, and her supervisor's statement that "she was on their radar to get rid of" when Hendrix told her about the discrimination lawsuit against AT&T and Southwestern Bell, sufficient to allege a causal connection between iQor's decision to terminate her and her filing a discrimination lawsuit against AT&T and Southwestern Bell. Thus, Hendrix's Title VII-retaliation claim survives a Rule 12(b)(6) analysis and remains.

## Recommendation

For the foregoing reasons, the Court should GRANT iQor's motion (ECF No. 27) in part and DISMISS with prejudice Hendrix's § 1981 and TCHRA claims as time-barred but DENY iQor's motion with respect to Hendrix's Title VII claims. Nonetheless, the Court should DISMISS without prejudice Hendrix's Title VII-discrimination claim for failure to state a claim under 28 U.S.C. § 1915(e)(2)(B)(ii). Only Hendrix's Title VII-retaliation claim remains.

**SO RECOMMENDED.**

June 7, 2021.

REBECCA RUTHERFORD
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND
NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).